## SALOMONS *v.* GRAHAM.

A State made a contract with a person whom it employed to work for it, to pay him so much money for his work; the money to be paid from time to time as the work went on. The work was done. Payment was made part in money, and part in State warrants much depreciated when paid out, and which the contractor was obliged, in order to keep his engagement to the State, to sell at a heavy loss; though in the hands of the purchasers they were ultimately redeemed. The people of the State subsequently ordained by its constitution that the debt of the State should not be increased so as to exceed $25,000,000. And after this, there being no money unappropriated in the treasury, and the debt of the State then being $25,000,000, the legislature passed an act to pay the contractor $50,331 to reimburse him the losses which he had sustained by the State's want of good faith in paying him in money all that it owed him under its contract. On an application for a mandamus, the

Supreme Court of the State adjudged that this act created a new debt, and so increased the debt of the State above $25,000,000, and was void. *Held* in this court, that no writ of error lay under the 25th section of the Judiciary Act.

MOTION by *Mr. T. J. Durant* to dismiss a writ of error to the Supreme Court of Louisiana, taken on assumption that the case fell within the 25th section of the Judiciary Act, quoted *supra*, p. 3. The case, as it appeared from some recitals and other evidences in the record, was thus:

The State of Louisiana, on the 22d March, 1866, made a contract with one Nixon, public printer, to pay him in cash, monthly, certain prices for printing to be done by him. He did the work. The State, however, paid him in cash but part of what it owed him. The balance was paid in State warrants, then much depreciated, though finally redeemed by the State. These warrants Nixon had to sell at large discounts, in order to comply with his contract to the State.

In December, 1870, the people of Louisiana ordained by their constitution that the debt of the State should not be increased so as to exceed $25,000,000.

This constitution being in force, the legislature, in March, 1871—reciting the contract with Nixon above mentioned, the kind of payments made—a part State warrants, " which he was compelled to receive, or get nothing at all"—his sale of them, and his losses: and reciting that " the good faith of the State required that it should make good the losses by him thus incurred"—passed an act, there being no moneys at the time in the treasury unappropriated, appropriating to him $50,331, " to reimburse him for the loss and discount suffered by him by reason of the premises stated, and of the failure of the State to pay him in cash, as *required by its contract with him.*" And the auditor of public accounts, one Graham, was required to issue his warrant for the amount. This the auditor refused to do; and Nixon, having sold his claim to one Salomons, Salomons applied to one of the State courts of Louisiana for a mandamus. The auditor and the attorney-general of Louisiana appeared, and showed for cause that the constitution of Louisiana forbade the act required, for

that the said constitution prohibited the increase of the debt of the State beyond $25,000,000; and that the debt already exceeded that amount before the passage of the act in favor of Nixon. The Supreme Court of the State where the case finally came, gave judgment, refusing the mandamus. The ground was that the State had settled with Nixon; that the appropriation made by the act of March, 1871, was the creation of a debt, and not the mere recognition of one existing at the time of the constitutional amendment, and unaffected by it, and that there having been no moneys in the treasury when the appropriation was made to answer it, the act increased the debt of the State above $25,000,000, and was unconstitutional and void. From this judgment of the Supreme Court of Louisiana the relators took this writ of error.

*Mr. J. J. Key, against the motion to dismiss,* argued that the contract of the State of March 22d, 1866, with Nixon, having been in force prior to the declaration of the constitution of Louisiana, made in December, 1870, and that contract not having been rightly performed—being in fact a still existing contract, as the act of March, 1871, showed—the constitution of Louisiana violated the 10th section of the 1st article of the Constitution of the United States, which declares that no State shall pass any law impairing the obligation of contracts. The new constitution of Louisiana was such a law. The case, he argued, thus came within the 2d clause of the 25th section.

The CHIEF JUSTICE:

No question as to the repugnance of the constitution of Louisiana to the Constitution of the United States was made in the Supreme Court of the State, or decided by that court; nor is it easy to see how such a question could be made. The main question argued and decided was whether an act of the legislature increasing the debt of the State when it already exceeded $25,000,000, was repugnant to the constitution of the State. The court held that it was. This decision involved no Federal question.

WRIT DISMISSED.